RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
Assistant United States Attorney
California Bar No. 112520
STEPHEN DA PONTE
Special Assistant United States Attorney
Florida Bar No. 58454
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7976
Email: Melanie.Pierson@usdoj.gov
Email: Stephen.DaPonte@usdoj.gov

Attorneys for United States of America



FILED
DEC 1 2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-cr-02607-TWR |
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| INTEGRAL HYGIENIC SOLUTIONS, INC. (1) | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, Melanie K. Pierson, Assistant United States Attorney, and Stephen Da Ponte, Special Assistant United States Attorney, and Defendant INTEGRAL HYGIENIC SOLUTIONS, INC., doing business as "TruClean," with the advice and consent of Evynn M. Overton and Alyse I. Constandinide, counsel for Defendant, as follows:

I

**THE PLEA**

Defendant agrees to waive Indictment and plead guilty to Counts 1 and 2 of an Information charging Defendant with:

Plea Agreement                                                          Def. Initials RJ

Count One:

*Knowingly transmitting a writing by means of interstate wire for the purpose of executing a scheme or plan to obtain money by means of false or fraudulent pretenses, representations, or promises, between on or about September 9, 2018, and August 28, 2020, within the Southern District of California, in violation of 18 U.S.C. §§ 1343 and 2.*

Count Two:

*Being a person who distributes or sells pesticides, knowingly violates a provision of Subchapter II of Chapter 6 of Title 7, United States Code (the Federal Insecticide, Fungicide and Rodenticide Act), that is, by distributing and selling an unregistered pesticide, in violation of 7 U.S.C. §§ 136j(a)(1)(A) and (E), between on or about September 9, 2018 to August 28, 2020, within the Southern District of California, a misdemeanor, in violation of 7 U.S.C. §§ 136j(a)(1)(A) and (E) and 136l(b)(1)(B) and 18 U.S.C. §2.*

The Government agrees to (1) defer any other charges based on sales of TruClean products between September 9, 2018, and August 28, 2020, and (2) not prosecute Defendant thereafter on such deferred charges unless Defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. If Defendant breaches this agreement or the guilty plea is set aside, section XII below shall apply.

This plea agreement is part of a "package" disposition as set forth in Section VI.E below

## II

## NATURE OF THE OFFENSE

A.   ELEMENTS EXPLAINED

The offenses to which Defendant is pleading guilty have the following elements:

Count One:

1.   An employee of the defendant, acting within the scope of the employment for the benefit of the company, knowingly participated in or

devised a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2. The statements made or omitted facts as part of the scheme were material, that is they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. The employee of the defendant, acting within the scope of the employment for the benefit of the company acted with the intent to defraud; that is, the intent to deceive and cheat; and

4. The employee, acting within the scope of employment for the benefit of the company, used or caused to be used wire communications in interstate commerce to carry out or attempt to carry out an essential part of the scheme.

Count Two:

1. An employee of the defendant, acting within the scope of the employment for the benefit of the company, knowingly sold and distributed a product in interstate commerce;

2. The product was a pesticide;

3. The product was not registered as a pesticide with the U.S. Environmental Protection Agency (EPA); and

4. The employee of the defendant, acting within the scope of the employment for the benefit of the company, knew that the product was a pesticide that did not bear its EPA registration number on the label and was not registered with the U.S. EPA.

B.   ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits

Plea Agreement                           3                        Def. Initials RSJ

that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. At all times relevant herein, Ray Louis Smith Jr. and Ramont Joseph Smith were owners and managers of Integral Hygienic Solutions, Inc., doing business as "TruClean", a company located in San Diego, California.

2. Ray Louis Smith Jr. and Ramont Joseph Smith, as part of TruClean's management team in San Diego, entered into an agreement with a Connecticut company whereby TruClean became the west coast distributor and applicator of certain chemical products produced by the Connecticut company.

3. In early 2020, Ray Louis Smith Jr. and Ramont Joseph Smith, as part of TruClean's management team in San Diego, decided to put TruClean's own labels on bottles of chemical products purchased from the Connecticut chemical company. Ray Louis Smith Jr., Ramont Joseph Smith, and TruClean then marketed, sold, and distributed the newly re-labeled products as providing year-long protection against infection from viruses, including the virus that causes Covid-19, on its social media pages and its website, truclean365.com.

4. A June 23, 2020, video posted online by TruClean employees depicted spraying inside a business facility with accompanying text that stated: "TruClean's Microorganism Remediation & Control services kills 99.999% of viruses and bacteria on all walls, floors,

furnishings, and equipment and inhibits the growth of bacteria, mold and mildew for up to a year. Our surface protectant creates an invisible, self-cleaning barrier on all surfaces it is applied to and eliminates pathogens 24/7/365 even after it dries…."

5. Products represented to kill viruses in the environment are regulated by the U.S. EPA as pesticides, pursuant to Title 7, United States Code, Section 136a. None of the products sold under the TruClean name were registered by the EPA, as required by law.

6. On or about April 22, 2020, TruClean's Operations Manager, located in San Diego, California, sent an email to a prospective customer in Powhattan, Kansas. This email included TruClean marketing material which contained several false and fraudulent representations designed to induce the potential customer into buying TruClean products. The false statements included representations that "The EPA has validated the 1 year claim through rigorous testing…." and "TruClean365 has been submitted to the antimicrobials division at EPA and is being tested against new protocols being developed for new products as these." These false statements could and did induce customers to purchase the TruClean product.

7. On or about June 22, 2020, an order was placed by an undercover agent to TruClean's website, truclean365.com, where payment was also made, for TruClean product. A

package was then prepared and placed in the U.S. Mail addressed to an undercover post office box used by the EPA in Los Angeles, CA. That package, when opened upon delivery, contained two 32-ounce bottles of the TruClean product "TruClean 90". As the employees of the defendant were aware, the labeling of the product: 1) did not bear the required EPA pesticide registration number; 2) did not contain the required ingredient statement, and 3) bore an EPA establishment number of a facility that was not registered to produce a product labeled as TruClean 90. The product was, in fact, not registered with the U.S. EPA. Pesticides that are unregistered may not be sold or distributed in the United States.

8. The parties agree that defendants Ray Louis Smith Jr., Ramont Joseph Smith, and TruClean received $823,337.60 in gross proceeds from the offense.

### III

### PENALTIES

The crime in Count 1 to which Defendant is pleading guilty carries the following penalties:

A. a maximum five years of probation for an organization;

B. a fine which is the greater of $500,000 or twice the amount of gross gain or loss;

C. a mandatory special assessment of $400 per count; and

D. forfeiture of the property which constitutes or is derived from proceeds traceable to the violation;

E.  In addition, Defendant shall be subject to an order of restitution to victims of the offense and persons other than victims of the offense who Defendant agrees to pay requiring Defendant to repay such persons up to $900,000.

## IV
## DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A.  Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B.  A speedy and public trial by jury;

C.  The assistance of counsel at all stages;

D.  Confront and cross-examine adverse witnesses; and

E.  Testify and present evidence and to have witnesses testify on behalf of Defendant.

## V
## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information.

Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI

### DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's agents, officers, or employees to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

E. The disposition contemplated by this agreement is part of a "package" disposition with codefendant(s) Ray Louis Smith Jr. and Ramont Joseph Smith. If any defendant in the package fails to perform or breaches any part of their agreement, no defendant can withdraw their guilty plea, but the Government is relieved from and not bound by any terms in any agreements in the package.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the Government will

Plea Agreement               8                    Def. Initials RSJ

bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

### SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not

binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

A.  SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

```
Base Offense Level  [§ 2B1.1(a)(1)]          7
Amount of Loss      [§ 2B1.1(b)(1)(H)]      +14
10 or more victims  [§ 2B1.1(b)(2)(A)]      +2
```

The parties further agree that the defendant has a culpability score of 4, as the company has fully cooperated in the investigation and clearly demonstrated acceptance of responsibility for the offense

B.  NO FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant may not request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553.

C.  "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

//

D.  SPECIAL ASSESSMENT/FINE/RESTITUTION/FORFEITURE

   1.  Special Assessment

The parties will jointly recommend that Defendant pay a special assessment in the amount of $400.00 per felony count of conviction to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

   2.  Fine

The parties agree that if the amount of restitution exceeds the available assets of the three defendants in this package deal, no fine will be recommended, in order that the defendants' limited assets can be applied to restitution. If sufficient assets are available, the Government will recommend a fine based on a disclosure of the defendant's available assets, but in no event greater than the low end of the Guideline range.

   3.  Restitution

The parties will jointly recommend that the defendant pay restitution, jointly and severally with co-defendants Ray Louis Smith Jr. and Ramont Joseph Smith, in the sum of $57,201.00 for the cost of disposal of the pesticides and up to $823,337.60 as repayment to victims requesting restitution who purchased TruClean products during the pandemic, for a potential total of approximately $880,538.60 to be paid in monthly installments as ordered by the court at the time of sentencing. Defendant agrees and understands that any payment schedule imposed by the Court is without prejudice to the United States to take all actions and take all remedies available to it to collect the full

amount of the restitution. Defendant further agrees that notwithstanding any court ordered schedule for payment, the full amount of restitution is due and payable forthwith and delinquent until paid in full.

Defendant agrees that the restitution, restitution judgment, payment provisions, and collection actions of this plea agreement are intended to, and will, survive defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. Defendant further agrees that any restitution collected and/or distributed will survive it, notwithstanding the abatement of any underlying criminal conviction after execution of this agreement.

The restitution described above shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

Further, the restitution described above shall be paid to or on behalf of the following agency:

| Victim | Amount |
|---|---|
| NFC Collections Section<br>Attn: DOJ Restitution<br>Re: FP&F 2020250100036801<br>P.O. Box 68907<br>Indianapolis, IN 46268. | $57,201.00 |
| Customers Requesting Restitution | TBD |

E. PROBATION

If the Court imposes a term of probation, Defendant will not seek to reduce or terminate early the term of probation until Defendant has served at least 2/3 of the term of probation and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

Plea Agreement

12

Def. Initials RSJ

## XI

### DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order up to $900,000. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exceptions are 1) Defendant may appeal a sentence of a fine above the high end of the guideline range recommended by the Government at sentencing, and 2) Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

## XII

### BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

  1. Failing to plead guilty pursuant to this agreement;

    2.    Failing to fully accept responsibility;

    3.    Failing to appear in court;

    4.    Attempting to withdraw the plea;

    5.    Failing to abide by any court order related to this case;

    6.    Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or

    7.    Engaging in additional criminal conduct from the time of arraignment until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by representatives of the Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are

admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant and all members of the defendant organization have read it. Defendant and all of the members of the defendant organization have discussed the terms of this agreement with defense counsel and fully understands its meaning and effect. The members of the defendant organization have fully discussed with counsel the possible conflicts of interest that might arise as a result of defense counsel representing both the defendant organization, Ray Louis Smith Jr., and Ramont Joseph Smith,

Plea Agreement                                15                       Def. Initials RSJ

and knowingly and intelligently waive any potential or actual conflicts of interest.

## XV

### DEFENDANT SATISFIED WITH COUNSEL

The members of the defendant organization have consulted with counsel and are satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

RANDY S. GROSSMAN
Acting United States Attorney

November 7, 2022
DATED

/s/ Melanie K. Pierson
MELANIE K. PIERSON
Assistant U.S. Attorney

November 7, 2022
DATED

/s/ Stephen Da Ponte
STEPHEN DA PONTE
Special Assistant U.S. Attorney

November 7, 2022
DATED

/S/ Evynn Overton
EVYNN M. OVERTON
Defense Counsel

11/3/20222
DATED

/S/ Alyse Constantinide
ALYSE I. CONSTANTIDINE
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

11-3-22
DATED

RAY SMITH
For Defendant INTEGRAL HYGIENIC SOLUTIONS, INC.